Kathy RODRIGUEZ–VIVES, Plaintiff,

v.

**PUERTO RICO FIREFIGHTERS CORPS OF the Commonwealth of PUERTO RICO, Defendant.**

**Civil No. 11–1749 (DRD).**

United States District Court, D. Puerto Rico.

March 31, 2013.

Enrique J. Mendoza–Mendez, Mendoza Law Office, San Juan, PR, Juan R. Davila–Diaz, Hato Rey, PR, for Plaintiff.

Yadhira Ramirez–Toro, Department of Justice, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Plaintiff Kathy Rodríguez–Vives brings the suit against her employer, Puerto Rico Firefighter Corps of the Commonwealth of Puerto Rico, under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* Plaintiff alleges sexual discrimination as well as retaliation for filing a complaint, which resulted in a settlement agreement in the case of *Rodriguez Nieves v. Commonwealth,* Civil No. 05–2136(DRD), Docket No. 73.

Pending before the Court are: (a) defendants' *Motion to Dismiss Amended Complaint Pursuant to FRCP 12,* Docket No. 37; (b) Plaintiff's *Response in Opposition to Motion to Dismiss Amended Complaint,* Docket No. 40; (c) defendant's *Reply to Plaintiff's Response in Opposition to Motion to Dismiss Amended Complaint,* Docket No. 45; and Plaintiff's *Sur–Reply,* Docket No. 48. For the reasons stated below, the *Motion to Dismiss Amended Complaint* is granted.

### Factual and Procedural Background

On October 24, 2005, Kathy Rodriguez–Vives ("Rodríguez" or "Plaintiff") filed a complaint against the Puerto Rico Firefighter Corps of the Commonwealth of Puerto Rico ("PRFC" or "Defendant"), in which she sought damages, equitable and injunctive relief based upon 42 U.S.C. § 1983, 28 U.S.C. § 2201, and upon 31 L.P.R.A. §§ 5141–5142 for alleged discriminatory hiring practices and procedures on

the basis of gender carried out by the PRFC against her in the interview, selection and training of firefighter recruits in violation of Rodríguez's rights under the Constitution and statutes of the United States and Puerto Rico. *See Rodríguez Nieves v. Commonwealth*, Civil No. 05–2136(DRD).

Rodríguez alleged that in June 2001, she applied for a position as a Firefighter with the PRFC and met all minimum requirements to apply for the position. She was subsequently placed on the Eligibility List. As stated in her complaint, on various occasions, Rodríguez received letters of notice and assurance that her name remained on the Eligibility List and participated in two interviews prior to being selected for the position. Rodríguez alleged that after July 2004, she received no further communications from the PRFC regarding her opportunities for employment. In Rodríguez' first complaint filed under Civil No. 05–2136(DRD), she claimed that the PRFC recruited new personnel from the years 2002 through 2005 who had lesser qualifications than Rodríguez.' She also claimed that the PRFC never gave her an explanation for being passed over for selection. Lastly, she claimed that the process used by the PRFC to evaluate candidates for recruitment is intentionally discriminatory against candidates who are women.

On February 5, 2009, the parties in the case reached a settlement agreement, wherein they ended the litigation process and, among other things, agreed to: (1) appoint Rodríguez to a Firefighter position, in a transitory status, until her admittance to the Academy for Firefighters, for which she would receive a salary of $1,500.00, with marginal benefits; (2) place Rodríguez at the fire station located in Coamo (as requested by Plaintiff); (3) admit Rodríguez to the next PRFC's Academy; (4) upon Rodríguez successfully completing the Academy, she would be appointed to a career position of firefighter; (5) Rodríguez waived her right to sue the defendants for any and all [prior] causes of action that were alleged **or could have been alleged in the action arising from the alleged discrimination.** (Emphasis ours). *See Settlement Agreement* filed under Civil No. 05–2136(DRD), Docket No. 73.

After the settlement agreement was executed on February 23, 2009, and judgment entered, Rodríguez filed the instant action on August 2, 2011, under Civil No. 11–1749(DRD), on the grounds of: (a) discrimination on the basis of gender in violation of Title VII, Civil Rights Act of 1991; (b) discriminatory treatment and retaliation by her supervisors after she became an employee of the PRFC, on or about March 2, 2009, as well as, (c) noncompliance with the aforementioned settlement agreement reached by the parties on February 5, 2009. *See Complaint* and *Amended Complaint*, Docket entries No. 1 and 32.

Rodríguez alleges in the *Complaint* and the *Amended Complaint* filed on August 1, 2012, that she was neither given the necessary training nor assigned the duties of a firefighter. However, the record shows that by the time the *Amended Complaint* was filed, Rodríguez was already a certified firefighter, as she was duly certified on November 4, 2011, *see* Docket No. 8–3. Notwithstanding, Rodriguez claims: (a) being a victim of unwelcome discriminatory comments, and profane language referring to her husband; (b) in one occasion, Rodríguez' supervisor Ortiz took cooking pans that Rodríguez had used and threw them in the garbage; (c) in another occasion, the same supervisor Ortiz shouted at Rodríguez and "threw the station's journal at her;" and (d) in one occasion, supervisor

Ortiz, saw Rodríguez behind his car, and accelerated it and dust-showered her. *See* Docket No. 32, pages 4–5. The Court notes that according to the allegations pled in the *Amended Complaint,* the last gender based discriminatory act was on or about September 21, 2009. See Docket No. 32, page 5, ¶ L.

Rodríguez seeks declaratory judgment stating that the acts described in the instant *Amended Complaint* are in violation of Title VII of the Civil Rights Act of 1991, compensation for damages and equitable remedies, which include an order directing that Rodríguez be admitted and duly trained at the Firefighter's Academy, and that she be named to a Firefighter position.

On August 13, 2012, the PRFC moved for dismissal of the *Amended Complaint,* arguing that the plaintiff's claim is for breach of a contractual obligation and therefore not actionable through the mechanism of Title VII. *See* Docket No. 37. Furthermore, Plaintiff alleges that she was discriminated against, as she was barred from exercising the tasks of a firefighter when the record shows that Rodríguez was not duly certified as a firefighter at the time of the claim filed on December 22, 2009.[1] *See* Docket No. 37. The PRFC also argues that Plaintiffs gender based discrimination claims fail to state a claim upon which relief can be granted, Docket No. 37. *See* Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Plaintiff filed her response in opposition to the dismissal of the *Amended Complaint,* Docket No. 40.

The uncontradicted record shows that the PRFC's Academy did not convene trainings for firefighters from 2004 to 2011. *See* Docket No. 85–1 filed under

Civil No. 05–2136(DRD). Rodríguez started working with the PRFC on March 2, 2009, and was certified as a firefighter after having completed the PRFC Training of Firefighter Level I course on November 4, 2011. Plaintiff completed this training with a "total of 391 hours of instructions, exceeding the 320 hours required by the internal rule." *See* Docket No. 8–3. Immediately thereafter, that is, on November 7, 2011, plaintiff was reclassified to a career position, subject to a six month probationary period. *See* Docket No. 15–1. As of this date, Rodríguez is a certified firefighter, with the proper equipment, performing the duties and tasks of a firefighter and stationed in the area of her preference.

## Applicable Law and Discussion

### Motion to Dismiss Standard

Fed.R.Civ.P. 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [her] claims across the line from conceivable to plausible" in order to comply with the

1. The record shows that Rodríguez became a certified firefighter on November 4, 2011.

*See* Docket 8–3, Civil No. 11–79(DRD).

requirements of Fed.R.Civ.P. 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal.* "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 677–680, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens*[2] claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal,* 556 U.S. at 663, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sánchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679–681, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernández,* 640 F.3d at 12, (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

The United States Court of Appeals for the First Circuit ("First Circuit") has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir.2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernández,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); *see Ocasio–Hernández,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955)

---

**2.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29. Parroting the elements of a cause of action falls outside the required threshold. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Further, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *see also Sánchez v. U.S.*, 671 F.3d 86, 97 (1st Cir.2012) (quoting *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R.*, 394 F.3d 40, 44 (1st Cir.2005)). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Méndez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen [ ] out rhetoric masquerading as litigation."). *Villalongo Gordillo v. Centennial De Puerto Rico/AT & T Mobility, Inc.*, Civ. 11–1115(DRD), 2012 WL 589576 (D.P.R. 2012).

## Plausibility

■ It is settled that the elements of the prima facie case are relevant "to a plausibility determination in a discrimination suit." *Rodríguez–Reyes, et al. v. Molina–Rodríguez, et al.*, 711 F.3d 49, 54 (1st Cir.2013) (citations omitted). "In a nutshell, the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Id.* "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that pertain at trial—in a discrimination case, the prima facie standard—she [plaintiff] need not plead facts sufficient to establish a prima facie case." *Id.* "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether **the complaint warrant[s] dismissal because it failed *in toto* to render plaintiff's entitlement to relief plausible.**" (Emphasis ours). *Id.* quoting *Twombly*, 550 U.S. at 569 n. 14, 127 S.Ct. 1955. "There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. **What counts is the 'cumulative effect of the [complaint's] factual allegations.'**" (Emphasis ours). *Id.* quoting *Ocasio–Hernández*, 640 F.3d at 14.

In the instant case, the complaint does not meet the plausibility standard set forth in *Twombly* and *Iqbal*. The facts described upon which Plaintiff bases her allegations are not specific enough to establish a plausible gender discrimination cause of action. Plaintiff does not detail the times and dates in which she was a victim of alleged unwelcome comments directed towards her or her husband by her supervisor, except for August 31, 2009, in which

Plaintiff's supervisor referred to Plaintiff's husband using foul language. The other instances of alleged discriminatory incidents were: (a) on August 27, 2009, when Plaintiff claims that her supervisor shouted at her and "threw the station's journal at her," although Plaintiff does not describe the context in which the incident took place nor explain how the book was thrown, if it hit Plaintiff, or with what intention was the book thrown; (b) on September 21, 2009, when Plaintiff's supervisor saw Plaintiff behind his car and allegedly accelerated it and dust-showered Plaintiff, but Plaintiff does not explain how she knew that Ortiz saw her or offer any details that lead to conclude that Plaintiff's supervisor was aware of her presence and intentionally dust-showered her. Details of other instances of discrimination or retaliation are slim, scarce, general, non-specific or simply nonexistent. *See Amended Complaint*, Docket No. 32. The Court stresses that the facts lack gender related plausibility for the reasons stated *infra* in this opinion.

In lack of the aforementioned details connecting the facts to gender discrimination, it is forceful to conclude that Plaintiff's claims are general conclusory allegations which lack any plausibility wherein the court may "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Therefore, defendant's motion to dismiss the amended complaint, Docket No. 37, pursuant to Federal Rule of Civil Procedure 12(b)(6) is in warranted.[3]

### Discrimination

Under Title VII, an individual who claims to have suffered discrimination or retaliation must file an administrative charge with the Equal Employment Opportunity Commission (EEOC) prior to commencing a civil action. *See* 42 U.S.C. § 2000e–5(b), (e)(1), (f)(1); *Morales–Cruz v. University of Puerto Rico*, 676 F.3d 220, 223 (1st Cir.2012). On December 22, 2009, Rodríguez filed an administrative charge with the EEOC prior to commencing the present civil action, in which she claimed to have suffered sex-based discrimination and retaliation, Docket No. 21. Furthermore, "a Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge (citation omitted). This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency." *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir.2005).

In the present case, Rodríguez filed the EEOC charge on December 22, 2009, Docket No. 21, and obtained a right-to-sue letter from the EEOC on May 11, 2011 for alleged discriminatory treatment and retaliation that occurred during August through September, 2009, Docket No. 50. On August 2, 2011, Rodríguez filed a complaint, Docket No. 1, later amended, Docket. No 32, in which she alleges being subjected to discrimination on the basis of gender in violation of Title VII, Civil Rights Act of 1991, discriminatory treatment and retaliation by her supervisors and noncompliance with the aforementioned settlement agreement reached by the parties on February 5, 2009, Docket No. 32.

---

**3.** Fed.R.Civ.P. 12. Federal Rule of Civil Procedure 12(b) states: Every defense to a claim for relief in a pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted ...

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To state a claim upon which relief can be granted, a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender. *See id.* In this case, the amended complaint pleads only the "gender stereotyping" variation of sex-based discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–51, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion), superseded in part by statute, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071; *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 59 (1st Cir.1999). A gender-stereotyping claim arises when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender. *See Thomas,* 183 F.3d at 59–61; *see also Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 355 (3d Cir.1999) (observing that Title VII protects against an employer's decisions to "fir[e] women it perceives as not feminine enough (or as too feminine)").

In *Morales–Cruz v. Univ. of Puerto Rico,* 676 F.3d 220, 224–25 (1st Cir.2012), the First Circuit considered an action brought by a law professor against the university and several of its officials, alleging gender discrimination and retaliation in violation of Title VII, after plaintiff was denied an extension of her probationary period by the University of Puerto Rico.

The alleged discriminatory and retaliatory conduct upon which plaintiff based her claims were comments made by defendants as to her being insecure, immature, fragile, having poor judgment, personality flaws, difficulty handling complex and sensitive situations. The plaintiff alleged that this conduct was the reason why she suffered an adverse employment action. The district court dismissed the action, holding that the plaintiff had failed to state an actionable claim. The First Circuit affirmed the district court's decision holding that the amended complaint failed to cross the plausibility threshold, as "it alleges no facts that would support an inference that UPRLS acted on the basis of gender, which is the centerpiece of a gender-stereotyping claim."[4] *Morales–Cruz,* 676 F.3d at 225. The court reasoned that "the remarks made by defendants of plaintiff are admittedly unflattering—but they are without exception gender-neutral." "All of them apply equally to persons of either gender and, while they might yield the conclusion that the plaintiff's termination was related to the professor-student fling, they do not support a reasonable inference that the defendants denied the plaintiff an extension of her probationary period because of failed gender stereotype expectations." "By definition, terms that convey only gender-neutral meanings are insufficient to anchor a gender-stereotyping claim. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 44 (2d Cir.2000)." *Morales–Cruz,* 676 F.3d at 225.

Applying the analysis of *Morales–Cruz* to the instant case, the plaintiff's allegations in the complaint are insufficient in order to draw a reasonable inference of gender stereotyping. All the alleged comments directed at Plaintiff by her supervi-

---

**4.** UPRLS refers to the University of Puerto Rico Law School, which was the plaintiff's employer.

sors, stating that she was incompetent, dumb, inept, that she did things backwards, that Sgt. Ortiz Bermúdez did not know why he had to end up stuck with Plaintiff in his station, are unpleasant, disrespectful and unwelcome but they are not gender-specific. *See* Docket No. 32, page 4. Moreover, terms that are gender-neutral fail to persuade this court to conclude that this cause of action is grounded upon an actionable claim of gender-stereotyping or other type of sexual discrimination under Title VII. "After all, Title VII does not prohibit . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious)" [sufficiently pervasive]. *Morales–Cruz*, 676 F.3d at 225–26 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

The same reasoning is applied for the isolated incidents alleged by Plaintiff, such as: (a) when Plaintiff's supervisor took cooking pans that Rodríguez had used and threw them in the garbage, (b) when the same supervisor shouted at Plaintiff and "threw the station's journal at her," (c) when one of her supervisors saw Plaintiff behind his car, accelerated it and dust-showered her. The Court finds that the facts as pled by Plaintiff fail to show that these incidents where carried out against Rodríguez because of her gender being a female. Moreover, these are isolated remarks and spared incidents, which stopped on or about September 21 2009, according

to the allegations of the *Amended Complaint*. *See* Docket No. 32, page 5. Therefore, the Court finds that Title VII does not apply to these type of incidents, as Plaintiff was unable to show and adverse employment action. On the contrary, as soon as the PRFC convened the Academy, after the period of closure from 2004 to 2011, Plaintiff was enrolled for training, and later certified as a firefighter upon completion of the Academy's training. *See* Docket No. 85–1 filed under Civil No. 05–2136(DRD), and Docket entries No. 8–3 and 15–1 filed under Civil No. 11–1749(DRD).

The Antidiscrimination laws, such as Title VII, were designed to protect workers' rights. "These laws serve salutary purposes, but they are not intended to function as a collective panacea for every work-related experience that is in some respect unjust, unfair, or unpleasant." *Ahern v. Shinseki*, 629 F.3d 49, 51 (1st Cir.2010). *See also Alberti v. Univ. of Puerto Rico*, 869 F.Supp.2d 231, 247 (D.P.R.2012).[5] The Court finds that Plaintiff's Title VII allegations and/or incidents are not sufficiently pervasive, as the facts are not germane to a gender discrimination and/or hostile work environment claim under Title VII (allegations referring to insulting language when referring to Rodríguez' husband, shouting at her, throwing the journal, and dust-showering Plaintiff at the parking lot).[6]

---

**5.** "When determining whether a work environment is hostile, the court considers 'all the circumstances,' included 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " . . . "None of these factors is individually determinative of the inquiry." *Alberti*, 869 F.Supp.2d at 244, citing *Ayala–Sepúlveda v. Municipality of San Germán*, 671 F.3d 24, 30–31 (1st Cir.2012) (internal citations omitted). In the instant case,

the Court finds that Plaintiff's claims constitutes either not gender related or not sufficiently pervasive, which fail to meet the test of a discriminatory conduct. *See also Gerald v. University of Puerto Rico*, 707 F.3d 7, 17 (1st Cir.2013).

**6.** *See First Amended Complaint And Demand For Jury Trial*, Docket No. 32, ¶ 10:

After the previously mentioned litigation was settled [Civil No. 05–2136(DRD) ], Rodríguez has been a victim of discriminatory

Plaintiff's claim of alleged discriminatory treatment based on the PRFC's failure to assign Rodríguez to functions normally assigned to certified firefighter are meritless, as Plaintiff lacked the firefighter training at that time. The facts stated in the complaint alleging a violation of the *Settlement Agreement* filed under Civil No. 05–2136(DRD), as the PRFC has failed to sent Plaintiff to the Academy for training, are also without merit, as they are now moot, for Plaintiff is a duly certified firefighter since November 4, 2011. *See* Docket No. 8–3. Allowing Plaintiff to perform such tasks without proper training would be illegal, as Rodríguez did not have the required training, and extremely negligent by the PRFC. The record shows that "since the year 2004 the Puerto Rico Fire Department has not opened an Academy for the recruitment of firefighter personnel." *See* Docket No. 85–1, Certification issued by Lieutenant Javish Collazo Fernández, Academic Affairs Director, Puerto Rico Fire Academy, dated August 12, 2011, and filed under Civil No. 05–2136(DRD). It is irrelevant to this action whether another person was allowed to work as a volunteer within the station, as Plaintiff wanted to work as a regular firefighter without being duly certified as a firefighter. Moreover, the law that enacted the *Puerto Rico Firefighters Corps*, 25 L.P.R.A. §§ 331 *et seq.*, specifically provides for the creation of the *Volunteer Firefighters Corps* to serve the Puerto Rico community, *see* 25 L.P.R.A. § 331z. The volunteers are paid based on a salary at the volunteer regular position, and if unemployed at minimum wage. The Fire Chief is the person in charge to determine how the volunteers will perform, the admission requirements, obligations, responsibilities and conduct, including their uniforms and the equipment to be used to them. 25 L.P.R.A. § 331z. The Court again reiterates that Plaintiff's situation is completely different, as Rodríguez was hired to be a firefighter, and to be certified as soon as the Academy of the Fire Department opens a new training session, bearing in mind that since the year 2004 there has been no training by the Academy.

In sum, Plaintiff has failed to plead enough facts which would lead to a reason-

---

treatment and retaliation by her supervisors. She is a victim of unwelcome discriminatory comments, discriminatory treatment based on gender and also for having engaged in protected conduct under federal and state law. She has been told that she is incompetent, dumb, not good enough to be a firefighter. Her only assign task is to sweep and swab the floors and to cook and clean the dishes. She also has not been issued uniforms and emergency kits as other coworkers. Due to the above, a charge was filed at the EEOC San Juan Local Office and a Notice of Right to Sue has been issued. Said filing constitutes protected conduct under federal and state law. Also, after filing of the mentioned charge of sex based discrimination and retaliation with the EEOC the retaliatory conduct continued and intensified.

The Court finds that these are general and conclusory allegations which fails to meet the plausibility test, as these allegations fail to describe the dates when the alleged incidents occurred and/or the name(s) of the persons that triggered these alleged events. The Court is cognizant that Plaintiff joined the PRFC on March 2, 2009, however, Rodríguez became a duly certified firefighter on November 4, 2011, due to the fact that "**since the year 2004 the Puerto Rico Fire Department has not opened an Academy for the recruitment of firefighter personnel.**" (Emphasis ours). *See* Docket No. 85–1 filed under Civil No. 05–2136(DRD). The record shows that Plaintiff's EEOC claim was filed on December 29, 2009, and the Notice of Right to Sue is dated May 11, 2011. The instant action was filed on August 2, 2011 under Civil No. 11–1749(DRD). The Court adds that Rodríguez had not graduated as a firefighter at that time.

able inference that the actions directed at Plaintiff by her supervisors constituted discrimination based upon gender. Therefore, there is no cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In addition, on November 4, 2011, the Government of Puerto Rico certified that Plaintiff had successfully completed training to fully perform as a qualified firefighter, Docket No. 8–3. Since there are no alleged instances where Plaintiff was not allowed to perform tasks as a firefighter after November 4, 2011, there are no further equitable remedies which can be granted to Plaintiff. Hence, this claim is also dismissed.

### Retaliation

██ Title VII makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice. 42 U.S.C. § 2000e–3(a); *Gerald v. Univ. of Puerto Rico,* 707 F.3d 7 (1st Cir.2013). "In order to make out a prima facie case of retaliation, [plaintiff] has to prove that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 22 (1st Cir.2002), followed by *Fantini v. Salem State Coll.,* 557 F.3d 22, 32 (1st Cir.2009). *See also Ayala–Sepúlveda v. Municipality of San Germán,* 661 F.Supp.2d 130, 138 (D.P.R.2009). "An employee has engaged in activity protected by Title VII if he [/she] has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Ayala–Sepúlveda,* 661 F.Supp.2d at 138 (citing *Fantini,* 557 F.3d at 32) (quotation marks omitted). To state a cause of action

under this portion of the statute, the pleading must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition. *Morales–Cruz,* 676 F.3d at 226. *See* 42 U.S.C. § 2000e–3(a).

██ In the instant case, the facts alleged in the *Amended Complaint* do not provide a reasonable basis for inferring that the alleged comments and actions carried out by the PRFC against Rodríguez reflected gender-based discrimination. The Court based on the slim record cannot conclude that Plaintiff opposed a practice prohibited by Title VII. Nor can this conclusion be reached based on the fact that Plaintiff had been involved in a prior EEOC proceeding against the PRFC. The complaint filed by Plaintiff on October 24, 2005, *Rodríguez–Nieves v. Commonwealth of Puerto Rico,* Civil No. 05–2136(DRD), was filed under 42 U.S.C. § 1983; Equal Protection Clause, Fourteenth Amendment and Puerto Rico law.

Since the prior proceeding was not brought under Title VII, (it was instead brought under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and under Puerto Rico law), it falls outside the scope of what constitutes an activity protected by Title VII. Furthermore:

[a]n employment action is considered "adverse" when it " 'results in some tangible, negative effect on the plaintiff's employment' through 'a serious and material change in terms, conditions or privileges of employment . . .' as viewed by a reasonable person in the circumstances." In determining whether an adverse employment action has occurred, courts must consider the totality of the allegations.

*Rodríguez–Machado v. Dep't of Veterans Affairs,* 845 F.Supp.2d 429, 439 (D.P.R. 2012) (internal citations omitted).

Moreover, the terms of the *Settlement Agreement, see* Docket No. 73 filed under Civil No. 05–2136(DRD), are now *res judicata,* as all the terms and conditions of the agreement have been fully complied with. The Court refers to the language of the *Settlement Agreement,* Docket No. 73, page 3, ¶ i, filed under Civil No. 05–2136(DRD).

> Plaintiff, his [sic] successors and their agents, hereby waive their right to prosecute and/or sue Defendants [sic], their successors and their agents [sic], in both their personal and official capacities, in any federal and/or state and/or administrative court and/or proceedings, or any other forum of whatever nature, **for any and all causes of action that were alleged or could have been alleged in** this action arising from the alleged discrimination of plaintiff by defendants [sic] **up to the time of the signing of this settlement agreement, as well as from any liability for damages, or any other costs and expenses, arising from any of the facts, circumstances and/or events directly related to this case and/or from any and all causes of action that were alleged or could have been alleged in this action arising from the alleged discrimination of plaintiff by defendants [sic] up to the time of the signing of this settlement agreement. However, causes of action that may accrue after the signing of this agreement are excluded from this settlement, of these causes of action are separate and independent from the causes of action raised or that could have been raised in the instant case.**[7] (Emphasis ours).

**7.** Aside from the semantics of the agreement, the Court finds that Plaintiff is barred by the *Settlement Agreement* filed under Civil No. 05–2136(DRD), and the doctrine of *res judicata,* to file a new complaint, Civil No. 11–1749(DRD), to include a cause of action under Title VII, that could have been included in the original settled complaint. The Court understands that there is an effort by plaintiff to perform an end around over the causes of action that allegedly occurred, existed or should have known prior to the date of the signing of the *Settlement Agreement,* however, the effort is futile. "Put simply, plaintiff's prior judicial claim is indeed protected activity that triggers Title VII's anti retaliation protection." *See Sur–Reply* filed by plaintiff, Docket No. 48, page 3. The Court is not persuaded by plaintiff's conclusory statement, as the Court has a *Settlement Agreement* that was signed by Plaintiff, which is now valid, enforceable and constitutes *res judicata,* as to the actions filed that were known then and should have been included in the original complaint. It is settled that the doctrine of *res judicata* at both federal and state cases is the same, as the elements are identical in both jurisdictions. *See García–Monagas, et al. v. García–Ramírez de Arellano,* 674 F.3d 45 (1st Cir.2012); *In re Medical Educational &* *Health Services, Inc.,* 474 B.R. 44, 54 (D.P.R. 2012) ("It is well settled law that the doctrines of *res judicata* and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been entered" ... "The First Circuit has also indicated that '*res judicata* operates as an absolute bar to the relitigation of the same cause of action between parties (or their privies) and that a prior judgment rendered on the merits is conclusive not only to the issues which were determined but as to all matters which might have been determined as well' ") (citing *Báez–Cruz v. Municipality of Comerío,* 140 F.3d 24 (1st Cir.1998); *Apparel Art International, Inc. v. Amertex Enterprises Ltd.,* 48 F.3d 576 (1st Cir.1995), quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *see also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 336, n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), *Westcott Const. v. Firemen's Fund of New Jersey,* 996 F.2d 14, 16 (1st Cir.1993) (quoting *Griffin v. State of R.I.,* 760 F.2d 359, 360 (1st Cir.1985))); *Federación de Maestros de Puerto Rico, et al. v. Acevedo–Vilá, et al.,* 545 F.Supp.2d 219, 226 (D.P.R.2008). In the

■ In the instant matter, Plaintiff has not alleged that she has been terminated form her work, nor has she alleged to being demoted, or that her salary or benefits have been affected in a negative fashion. Plaintiff was transferred to another fire station for a brief period but then was quickly reinstated in Coamo, as per Rodríguez' request, and as agreed in the *Settlement Agreement*. Moreover, Plaintiff was not assigned to functions of a firefighter or allowed to attend emergencies while she was not qualified as a firefighter, as it would have been irresponsible and illegal to otherwise act. In addition, there are no facts pled in support of discriminatory incidents after Rodríguez received her certification as a firefighter on November 4, 2011. Accordingly, since the facts stated have not demonstrated more than "sporadic use of abusive language ... occasional teasing," and unpleasant insults related to Plaintiff's husband, and other non gender specific facts, there is no plausible finding in the *Amended Complaint* of a conduct that is pervasive enough to lead to a reasonable inference that an adverse employment action has occurred. *See Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. Further, as explained above, all actions that occurred after the *Settlement Agreement* are not sufficiently "severe or pervasive" to qualify as an actionable cause of action or are not properly identified as gender related. *See Gerald v. University of Puerto Rico*, 707 F.3d at 17.[8] The Court finds that Plaintiff had failed to meet the plausibility standard, hence, plaintiff does not have an action claim under Title VII.

To recapitulate, if the Court eliminates the allegations that she was not offered the training to be certified as a firefighter until sometime in the year 2011, because no trainings were offered by the PRFC's Academy from 2004 to 2011, and also eliminates the allegations that others worked as volunteers, not as regular employees in the fire station, what remains are allegations not specifically related to gender or not sufficiently pervasive.

### Conclusion

For the reasons set forth above, the *Motion to Dismiss Amended Complaint Pursuant To FRCP 12*, Docket No. 37, is granted. Hence, all federal causes of action are dismissed with prejudice, and all state law claims are hereby dismissed without prejudice.

Judgment will be entered accordingly.

IT IS SO ORDERED.

---

instant case, the Court finds that Plaintiff's argument to bring actionable causes of action under Title VII based on gender discrimination prior to the signing of the *Settlement Agreement* is simply barred.

8. "To prevail on a hostile work environment sexual harassment claim, a plaintiff must establish in essence: (1) membership in a protected class and (2) unwelcome sexual harassment, (3) which was based on sex, (4) was sufficiently severe or pervasive, (5) was objectively and subjectively offensive, and finally (6) that some basis for employer liability has been established. *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 (1st Cir.2007)." *Gerald v. University of Puerto Rico*, 707 F.3d at 17.